**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PAUL B. ORHII, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-3557 |
| | § | |
| SOWORE OMOYELE, DBA | § | |
| SAHARAREPORTERS.COM, | § | |
|     Defendant. | § | |

**MEMORANDUM AND ORDER**

In this action for libel, Defendant Omoyele Sowore has filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 6] ("Motion"), seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff has responded, *see* Doc. # 12, and Defendant has replied. *See* Doc. # 13. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted**.

**I.      BACKGROUND**

Plaintiff Paul B. Orhii alleges that Defendant published a libelous internet article about him and seeks damages of $25 million. Plaintiff is a native of Nigeria and a naturalized United States citizen. He was a resident of Houston when the complaint in this action was filed in December 2008. In January 2009, he was

appointed to head the National Agency for Food and Drug Administration and Control (NAFDAC) in Nigeria and thus apparently is currently residing in Nigeria.[1] Plaintiff was educated in Nigeria, received a medical degree and a Ph.D. in Medicine (Neuropharmacology) in Russia, and a Juris Doctor degree from the Thurgood Marshall School of Law at Texas Southern University in Houston. Dr. Orhii has practiced both medicine and law. From 1993 to 2003, he worked as a research scientist at the University of Texas Health Science Center in San Antonio.

Defendant Sowore, a Nigerian citizen and lawful permanent resident of the United States, is a resident of New Jersey. Defendant states that he was forced to leave Nigeria in 1999 because he was openly critical of the Nigerian government, and describes himself as "actively involved in investigating and exposing corrupt activities of various Nigerian government officials."[2] He operates a website, saharareporters.com, from his New Jersey home, and states that his "primary mission in running the website is to bring attention to questionable actions by Nigerian public officials and other powerful individuals in Nigeria."[3] He further states that the website

---

[1] *See* Motion, at 1 (citing Exhibits A-3, A-4, and A-5 to Motion). Plaintiff's Response does not directly address this point but states that Plaintiff "was at the time of the filing of this suit" a resident of Houston. Response, at 1.

[2] Motion, at 2.

[3] Affidavit of Omoyele Sowore (Exhibit A to Motion) ("Sowore Affidavit"), at 2, ¶ 8.

"is targeted first to readers in Nigeria, and second to readers throughout the world who are interested in Nigeria's governmental affairs."[4]  Defendant has no employees, although he uses volunteer writers, and the website is available free to the public. Defendant does not conduct business in Texas, has never entered a contract or solicited business in Texas, has no assets in Texas, and uses no volunteer writers who reside in Texas.[5]  He relies primarily on Nigerian sources for his articles and has never relied on a source in Texas.[6]

On May 13, 2008, Defendant posted the allegedly libelous article, entitled *Pfizer Case Settlement: Aondoakaa Plans Big Pay Day Through Cousin*, on his website.[7]  The Article reported on a large out-of-court settlement of a civil and criminal case in Nigerian courts against the pharmaceutical company Pfizer and claimed that Nigeria's Attorney General, Michael Aondoakaa, would personally benefit from the settlement.  It accused Aondoakaa of pursuing a "double agenda," publicly declaring his determination to make Pfizer pay for certain illegal drug trials, but secretly negotiating with Pfizer officials to "work[] out a deal favorable to Pfizer

---

[4]     *Id*. at 2, ¶ 9.

[5]     *Id*. at 1, ¶¶ 1-2, 5.

[6]     *Id*. at 2, ¶ 12.

[7]     *Pfizer Case Settlement: Aondoakaa Plans Big Pay Day Through Cousin*, May 13, 2008 (Exhibit A-2 to Motion) ("Article").

in return for a hefty fee 'in the millions of dollars,' one reliable source said."[8]  The Article also alleged that Plaintiff was involved in the scheme, and reported Plaintiff's connections to Texas:

> Aondoakaa was pushing for a $1 billion settlement amount so that he can pay himself $10 million through his first cousin, Dr. Paul Botwev Orhii. The AG [Aondoakaa] earlier engineered Orhii's appointment as an expert witness and 'pharmacological litigation support specialist' in the cases pending at the high courts in Abuja and Kano.  Orhii's appointment was relayed in a February 2008 letter signed by Aondoakaa. Orhii and Aondoakaa are paternal first cousins, and both hail from Ushongo local government area of Benue State.  They are believed to be nephews to Justice Aloysius Katsina-Alu who is effectively Nigeria's second-ranking Supreme Court justice.
>
> Before cooking up the latest scam through his cousin, Aondoakaa had earlier tried to use Orhii as an 'international legal consultant' to the Federal Government. . . . Orhii was a new comer to the law profession. ***Orhii graduated from the Thurgood Marshall School of Law and was called to the bar in 2007 with Bar number 1683 in the State of Texas***.
>
> \* \* \* \*
>
> Orhii reportedly graduated from the University of Jos [Nigeria] with a degree in medicine.  He then traveled to Russia for further studies in medical research and ***later came to Texas where he worked as a biomedical researcher at the University of Texas in San Antonio. He currently lives in the Bisson[n]et area of Houston, Texas***.
>
> Since leaving law school, Orhii is said to have focused on making big money out of Nigeria. . . .[9]

---

[8]   *Id.* at 1.

[9]   Article, at 2-3.

Plaintiff maintains that the bribery allegations are false and denies that he is Aondoakaa's cousin.

Defendant avers that he "made no contact with anyone in Texas in connection with writing the article."[10] He states that he relied upon individuals in Nigeria, a Nigerian citizen residing in the United States but not in Texas, information from a Nigerian publication, and an internet search regarding Orhii.[11]

## II.    PERSONAL JURISDICTION STANDARD

Defendant Sowore seeks dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2).[12] Plaintiff bears the burden of establishing that Sowore, a non-resident defendant, has contacts with the forum state sufficient to invoke the jurisdiction of this Court.[13]

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required to

---

[10]   Sowore Affidavit, at 3, ¶ 16.

[11]   Motion, at 11; Sowore Affidavit, at 3, ¶ 16.

[12]   FED. R. CIV. P. 12(b)(2).

[13]   *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

present facts sufficient to constitute a *prima facie* case of personal jurisdiction.[14] The *prima facie* showing may be established by the pleadings, depositions, affidavits, or exhibits of record.[15] A court must accept as true the plaintiff's uncontroverted allegations and resolve any factual conflicts in favor of the plaintiff.[16] The law, however, does not require the court to credit conclusory allegations, even if uncontroverted.[17]

As interpreted by the Supreme Court and Fifth Circuit, a court's exercise of personal jurisdiction over a non-resident defendant comports with constitutional due process requirements when (1) the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice."[18] Both prongs must be satisfied in order

---

[14] *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 342-43 (5th Cir. 2004); *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000).

[15] *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

[16] *Freudensprung*, 379 F.3d at 343; *Cent. Freight*, 322 F.3d at 380; *Alpine View Co.*, 205 F.3d at 214.

[17] *Cent. Freight*, 322 F.3d at 380; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

[18] *Moncrief Oil Int'l., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *Latshaw v. Johnston,* 167 F.3d
(continued...)

for a court to exercise personal jurisdiction over the defendant.

The "minimum contacts" prong is further subdivided into contacts that suffice to confer "specific jurisdiction" and those that give rise to "general jurisdiction." When, as in this case, a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine (1) whether "the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's contacts with the forum state."[19]

The fact that a Texas plaintiff suffered some harm in Texas is insufficient to establish specific jurisdiction in this forum.[20] Rather, the focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation."[21] Contacts that are "random," "fortuitous," or "attenuated" do not satisfy

---

[18] (...continued)
208, 211 (5th Cir. 1999)).

[19] *Freudensprung*, 379 F.3d at 343; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5th Cir. 1993) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). In cases in which general jurisdiction is asserted, the court must determine whether the defendant has engaged in "continuous and systematic contacts" with the forum state. *Freudensprung*, 379 F.3d at 343.

[20] *Revell v. Lidov*, 317 F.3d 467, 473 & n.41 (5th Cir. 2002); *Panda Brandywine*, 253 F.3d at 869-70.

[21] *Freudensprung*, 379 F.3da t 343.

the minimum contacts requirement.[22]

If the plaintiff makes a *prima facie* showing of minimum contacts, then the burden shifts to the defendant to show that the court's exercise of jurisdiction would not comply with "fair play" and "substantial justice."[23] In making a fundamental fairness determination, a court must examine: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies.[24]

In a libel case such as this one, specific jurisdiction exists under *Calder v. Jones* when "an author or publisher . . . 'aims' a story at the state knowing that the 'effects' of the story will be felt there."[25]

> [T]he "aim" of the plaintiff under the *Calder* test must be demonstrated by showing that (1) the subject matter of ***and*** (2) the sources relied upon for the article were in the forum state.[26]

The plaintiff's "mere residence" in the forum is insufficient to show the defendant's

---

[22] *Moncrief*, 481 F.3d at 312.

[23] *Freudensprung*, 379 F.3d at 343.

[24] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008); *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993)).

[25] *Fielding*, 415 F.3d at 425 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

[26] *Id*. at 426 (citing *Revell*, 317 F.3d at 474 & n. 48) (emphasis added)

knowledge that effects would be felt in the forum; rather, a "'more direct aim is required.'"[27]

## III. ANALYSIS

Plaintiff argues that this Court has specific personal jurisdiction over Defendant under *Calder* because "the Defendant admittedly knew that the Plaintiff here lived and worked in Texas and therefore knew that the defamatory statements accusing the Plaintiff of criminal activity were calculated to cause injury to the Plaintiff in Texas."[28] Plaintiff argues that Defendant "directed his 'activities'; i.e., the publication of his libelous article to the Plaintiff, a resident of the forum, Texas."[29]  Plaintiff also states that the Article "clearly tied" Plaintiff to Texas by reporting that he graduated from law school in Houston, had been "called to" the Texas bar, had worked in San Antonio as a biomedical researcher, and currently lived in Houston.[30]

The Fifth Circuit has clearly held that a plaintiff's "mere residence" in the forum is insufficient to show the defendant's knowledge that effects would be felt in

---

[27]   *Id.* at 427 (quoting *Revell*, 317 F.3d at 476).

[28]   Response, at 3-4.

[29]   *Id.* at 4 (citing *Burger King*, 471 U.S. 462).

[30]   *Id.*

the forum.[31]  Rather, "the "aim" of the plaintiff under the *Calder* test must be demonstrated by showing that (1) the subject matter of ***and*** (2) the sources relied upon for the article were in the forum state.[32]  In this case, the subject matter of the Article was clearly focused on Nigeria and the actions of its public officials.  The references to Orhii's residence in Houston and work in Texas were "merely collateral" to the Article's focus, supplying "background, biographical information" about Orhii.[33]  Moreover, as for Defendant Sowore's sources for the Article, Plaintiff has not refuted Defendant's evidence that he relied upon no Texas sources.[34]

Plaintiff has not made a *prima facie* showing that Defendant Sowore "aimed"

---

[31] *Fielding*, 415 F.3d at 427 (quoting *Revell*, 317 F.3d at 476); *Revell*, 317 F.3d at 473 ("the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*").

[32] *Fielding*, 415 F.3d at 426 (citing *Revell*, 317 F.3d at 474 & n. 48) (emphasis added)

[33] *See id.* at 426-27.  In *Fielding*, a libel case in which the Fifth Circuit dismissed the defendant for lack of personal jurisdiction, the allegedly libelous articles described an alleged extramarital affair by the Swiss ambassador to Germany, who lived with Fielding, his wife, in Berlin.  One article cast Fielding, a Texas citizen, in an unflattering light and included an interview from Fielding's Texan ex-husband and information from Fielding's college yearbook.  *Id.* at 423.  The Fifth Circuit found that the "clear focus" of the articles was Fielding's husband's alleged affair and its aftermath in Germany and Switzerland, whereas the references to Fielding's college years and career in Texas, and the interview with her ex-husband, "served merely to supply background, biographical information about Fielding."  *Id.* at 426.

[34] *See* Sowore Affidavit, at 3, ¶ 16.  In *Fielding*, unlike the case at bar, the defendant had acknowledged use of Texas sources.  Nevertheless, the Fifth Circuit held that personal jurisdiction was lacking, noting that the "clear thrust of the articles . . . shows the marginal importance of this Texas research."  *See Fielding*, 415 F.3d at 426.

the Article at Texas, knowing that its effects would be felt here, as required under *Calder* and *Fielding*. Defendant's contacts with Texas are insufficient to invoke the personal jurisdiction of this Court.

## IV. CONCLUSION AND ORDER

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 6] is **GRANTED**. It is further

**ORDERED** that this action is **DISMISSED**.

SIGNED at Houston, Texas, this **31**st day of **March, 2009**.

Nancy F. Atlas
United States District Judge